# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 5, 2005            Decided June 3, 2005

No. 04-3135

UNITED STATES OF AMERICA,
APPELLEE

v.

TALIB D. WATSON,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00314-01)

---

*Robert J. Kovacev* argued the cause for appellant. With him on the briefs was *Stacy D. Belf.*

*Mary B. McCord*, Assistant U.S. Attorney, U.S. Attorney's Office, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *John R. Fisher* and *Roy W. McLeese, III*, Assistant U.S. Attorneys.

Before: SENTELLE, RANDOLPH and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: This case comes before us on appeal from the United States District Court for the District of Columbia. Appellant-Defendant Talib Watson challenges his criminal conviction on two grounds: First, he submits that the trial court abused its discretion by limiting cross-examination of a police officer and of a cooperating witness. Second, he submits that the trial court abused its discretion by admitting evidence regarding Defendant's prior bad acts when Defendant was notified of the nature of the evidence only shortly before the court commenced *voir dire* examination of the jury. For the reasons set forth below, this Court affirms Watson's conviction and remands the record to the District Court for re-sentencing in light of the Supreme Court's recent decision in *United States v. Booker*.

## I. Background

### A. *The Stop, the Search, the Arrest, and the Questions*

On June 23, 2003, Watson was driving in Northwest Washington when he was pulled over by Officer John Cox of the U.S. Park Police. Cox testified that he pulled Watson over because the windows of Watson's Cadillac Escalade were tinted excessively, in violation of District of Columbia law. Cox determined that Watson was subject to an outstanding misdemeanor warrant and arrested him. Watson had $7,675 on his person. After arresting Watson, Cox searched the Escalade, finding $1,650 in the center console. The Escalade was moved to another site, where Cox continued the search. In a side door panel, he found two firearms: a loaded KelTec 40-caliber semi-automatic handgun and a loaded Beretta 9-mm pistol. In other doors he found socks containing more KelTec and Beretta ammunition. In the back seat and map pocket he found "hideaway" (i.e., disguised) cans, one of which contained marijuana and had Watson's fingerprints on it.

Hours later, Cox took Watson out of the jail cell, whereupon, according to Cox, he allegedly gave him a "rights card" and read him his *Miranda* rights, to which Watson replied "yes" to all questions. No one was present at the time, and the waiver card allegedly signed by Watson was not produced at trial. According to Cox's testimony, Watson admitted to Cox that the "stuff" in the car was his. Cox did not write down Watson's statement.

Police determined that the KelTec handgun had been sold lawfully to a Russell Lane ("Lane") by a Christopher Bannock. The government interviewed Lane in August 2003. In December 2003, Lane was arrested for unlawful possession of a firearm and possession of crack cocaine; in early 2004 he entered a plea agreement in which he was obligated to testify truthfully for the government in the Watson matter.

Watson was indicted for felonious possession of firearms – i.e., the KelTec and the Beretta – and ammunition, and for simple possession of marijuana.

## B. *Testimony of Cox*

At trial, Cox testified to his observations and to his account of Watson's alleged admission of ownership of the weapons. Watson sought to suppress the fruits of Cox's search, including Watson's alleged statements, on the theory that Officer Cox lacked probable cause to stop Watson's car and that the stop was pretextual. At the suppression hearing, Watson, who is black, attempted to introduce evidence purporting to show that Cox had a propensity for stopping black drivers on window-tint charges. In 18 months, Cox allegedly stopped at least 27 black drivers for window-tint violations that culminated in drug charges. The District Court refused to allow Watson to cross-examine Cox on this particular issue, for reasons discussed

further below.

At trial, Watson sought to cross-examine Cox regarding 33 cases in which he alleged that Cox had "stopped young black males for tinted windows and many of those cases also had the marijuana component to it." This, he said, suggested Cox's "bias" so as to impeach his credibility. The court expressed skepticism as to the relevance of this line of questioning. Following arguments, the court precluded that line of cross-examination, for reasons discussed further below.

In closing arguments, the prosecutor extolled Cox's impartiality.

C. *Testimony of Lane & Evidence of Prior Bad Acts*

At trial, Lane testified that he sold the recovered KelTec handgun to an individual known as "Q," whom Lane watched passing the firearm to Watson. Lane also testified, over Watson's objection, that he had previously sold another firearm to Watson. This second firearm was not a part of the Watson indictment and was never actually recovered from Watson.

At a status conference one week before the trial began, the Government warned that it would offer such a "cooperating witness," but would not disclose either the witness's identity or the "facts and circumstances" surrounding his testimony. The government did not give notice that the witness would be offering Rule 404(b) ("prior bad acts") evidence. Watson notes that the Government had stated during discovery that it had no 404(b) evidence "at this time," and never amended that response. That response was dated August 2, 2003, before the Government contacted Lane and months before Lane's December 2003 arrest and subsequent plea bargain.

On the day the trial began, before jury *voir dire*, the Government revealed Lane's identity and the fact that Lane would testify to the two KelTec handguns he sold Watson (only one of which Cox recovered). Watson objected to the late notice.

Following *voir dire*, the prosecutor turned over to Watson's counsel a large amount of information about Lane, and suggested that after arguments the court break for the day so that Watson's counsel could have an opportunity to go over the material. But Watson's counsel disagreed, suggesting that the government begin direct examination of its first witness, saying, "I would be ready to go in the morning." After lunch, defense counsel changed course and raised the Rule 404(b) notice requirement, arguing he wasn't sure he had "ample notice to do a thorough investigation and a meaningful cross-examination." The court ruled that it would permit introduction of the 404(b) evidence.

Lane testified less than 48 hours after the prosecutor revealed Lane's identity. While Lane was on the stand, defense counsel cross-examined him regarding his plea agreement. The defense sought to challenge Lane's credibility by questioning him about an exchange between the prosecutor[1] and the judge in Lane's case regarding the prosecutor's recommendation that Lane be released pending sentencing. The exchange was as follows:

The Court: All right, when do you want to come back?

Prosecutor: Your honor, the government is actually particularly optimistic about Mr. Lane's ability to complete

---

[1]  The same prosecutor represented the government in both Lane's and Watson's cases.

his cooperation within the next three or four months. It's a scheduling matter.

*See* Tr. of June 4, 2004 at 142 (from the Watson proceeding, reading back the exchange from the Lane proceeding). On cross-examination, Watson's counsel sought to introduce this statement as to the prosecutor's "optimis[m]," arguing at the ensuing bench conference that this was evidence of bias on Lane's part, in that it showed that Lane had committed to "cooperate" by supplying prosecution-favored testimony – whether truthful or not. The prosecutor argued, and the court agreed, that the statement went to a scheduling matter, not to the substance of Lane's Watson-case testimony. "Cooperation" meant nothing more than testifying *per se*, not testifying *favorably*. The judge did not preclude cross-examination, but instructed defense counsel that cross-examination would have to focus on "the whole context of [the statement]." Defense counsel did not challenge this ruling; instead, he said, "I'll move on. I'll move on." The Court sustained the prosecutor's objection.

In closing arguments, the prosecutor extolled Lane's credibility.

### D. *Conviction and Sentencing*

On June 8, 2004, the jury found Watson guilty of firearms and drug offenses, and not guilty of an ammunition offense. On September 9, 2004, the court sentenced Watson to 108 months' imprisonment on the firearms offense and 12 months' imprisonment on the marijuana offense, to be served concurrently, followed by three years of supervised release.

## II. Analysis

### A. *Standard of Review*

This Court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Whitmore*, 359 F.3d 609, 616 (D.C. Cir. 2004); *United States v. Alexander*, 331 F.3d 116, 122 (D.C. Cir. 2003). Despite the guarantees of the Sixth Amendment's Confrontation clause,

> [t]he district court nonetheless has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses. It must be cautious, however, particularly where a party is seeking to impeach a witness whose credibility could have an important influence on the outcome of the trial.

*Whitmore*, 359 F.3d at 615-16 (citations and quotation marks omitted). Because "[w]e . . . recognize that the district court is in the best position to conduct the balancing test," we "review a FED. R. EVID. 403 ruling 'only for grave abuse.'" *Id.* at 619 (quoting *United States v. Cassell*, 292 F.3d 788, 795 (D.C. Cir. 2003)).

### B. *Cross-Examinations of Cox & Lane*

#### 1. *Officer Cox*

Watson argues that, by precluding defense counsel from questioning Officer Cox about approximately thirty cases where he allegedly stopped black men on window-tint violations but eventually arrested them on drug charges, the court inappropriately "foreclosed *all* examination" into Cox's credibility in violation of Watson's Sixth Amendment right to

confront witnesses brought against him. Br. for Appellant at 16. This issue, Watson urges, "is key to the Government's case." *Id.*

In *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986), which similarly dealt with potential witness bias, the Supreme Court held that "the exposure of a witness'[s] motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Watson argues that under *Van Arsdall*, therefore, a trial court may not "prohibit[] *all* inquiry" into the bias of a witness. Br. for Appellant at 16 (quoting *Delaware v. Van Arsdall*, 475 U.S. at 679 (emphasis in original)). But *Van Arsdall* reminds in terms equally strong that the Constitution does not give a defendant *limitless* discretion in presenting evidence for purposes of witness impeachment:

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Van Arsdall*, 475 U.S. at 679 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*) (emphasis in original)).

A trial court may prevent the introduction of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. In this case, evidence that Cox may have arrested (or stopped) various persons of a common demographic on common charges could not logically be probative of bias absent evidence (1) that Cox knew of the driver's race before stopping him, and, more importantly, (2) that the officer's record of like arrests is composed disproportionately of arrests of members of that demographic group. At the motion hearing, Cox testified without contradiction that he could not see the driver of Watson's vehicle. Tr. of Jan. 16, 2004, at 43. Moreover, defense counsel failed to offer any showing of disparate treatment sufficient to justify further inquiry into alleged racial bias or profiling on Cox's part. As the trial judge noted, the proposed cross-examination "would in essence be multiple steps removed from actually being able to demonstrate that there was in any way a racial bias on the part of the police officer in this particular case such that his credibility . . . would be placed into question." Tr. of June 3, 2004.

In sum, the relevance of the evidence was not readily apparent given the lack of information regarding Cox's arrests of members of other demographic groups, and its probative value was substantially outweighed by the threat of undue delay or confusion of issues inherent in a drawn-out inquiry into the details of Cox's history of arrests. This Court holds that the trial court acted well within its discretion by limiting this line of questioning. A court may not limit "*all* inquiry" into bias, 475 U.S. at 679 (emphasis in original), but it may preclude inquiry that would be more protracted and prejudicial than probative.

## 2. *Russell Lane*

Watson also argues that the trial court erred in precluding cross-examination of cooperating witness Lane that would have attempted to raise doubts regarding the veracity and motivation of Lane's testimony. At issue was the prosecutor's statement in Lane's criminal proceedings that, in the words of Watson, "suggested that the Government was 'optimistic' about Lane's testimony." Br. for Appellant at 16.

As noted above, when the court in Lane's proceeding asked the prosecutor for advice regarding the scheduling of Lane's case, the prosecutor stated that "the government is actually particularly optimistic about Mr. Lane's ability to complete his cooperation within the next three or four months. It's a scheduling matter." Tr. of June 4, 2004, at 142.

The trial court prohibited defense counsel from raising the issue in a manner that would have obscured the full context of the prosecutor's statement. The court did not preclude *all* questioning on this matter in cross-examination of Lane. Rather, it instructed defense counsel that "if you're going to go into a statement in open court that relates to the time frame that this will occur, you're going to have to give the whole context of it. It raises the question of how is it relevant to cross-examination." *Id.* at 143.

The trial court would have allowed this line of questioning to go forward so long as defense counsel included the entire statement in its question in order to prevent flagrant distortion of the exchange, and the jury was provided with extensive direct- and cross-examination regarding the nature of Lane's plea agreement. This Court, therefore, concludes that the trial court did not abuse its discretion in limiting cross-examination – certainly not in such a way as to prejudice Watson. As with

the foreclosed cross-examination of Cox, the probative value of this evidence (assuming its relevance) was deemed to have been outweighed by the threat that the presentation would mislead the jury. FED. R. EVID. 403. We see no abuse of discretion on the record before us.

## C. *Evidence of Prior Bad Acts*

Watson argues that the trial court erred in allowing the prosecution to introduce evidence of prior bad acts, under Rule 404(b) of the Federal Rules of Evidence, despite the prosecution's failure to apprise the defense of the nature of the identity of the witness until the morning of *voir dire*, only 48 hours before witness Lane was called to testify.

The courts must not treat lightly the "surprise" introduction of evidence that leaves a criminal defendant without opportunity to prepare an effective response. Rule 404(b) mandates that where the government seeks to introduce evidence of prior bad acts against the defendant, it must "provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." FED. R. EVID. 404(b). For that reason, this Court has held that "Rule 404(b) does not empower a district judge to excuse the government from providing *any* notice that it intends to use bad acts evidence." *United States v. Spinner*, 152 F.3d 950, 961 (D.C. Cir. 1998) (emphasis in original).

In this case, however, the Court need not answer the question of whether failure to provide notice prior to *voir dire* is sufficiently close to failure to provide "*any* notice" to make this case analogous to *Spinner*. Even assuming *arguendo* that the prosecution failed to bear its Rule 404(b) notice obligation, this Court holds that Watson failed to show prejudice from the error.

To warrant reversal, an error of the trial court must "affect substantial rights" – i.e., it must be prejudicial, having an effect on the outcome of district court proceedings. *United States v. Olano*, 507 U.S. 725, 734 (1993) (quoting FED. R. CRIM. P. 52(b)); *see also Spinner*, 152 F.3d at 961. In this case Watson has not demonstrated that he suffered any prejudice. His own counsel initially rejected the prosecutor's suggestion that the court recess until the next day in order to give the defense time to respond to the prosecutor's late disclosure of the general nature of the 404(b) evidence. The prosecutor's suggestion could not have been more emphatic:

> Here is our concern, Your Honor, in deference to [defense counsel] Mr. Daum. We are now turning over at the lunch break here a great deal of information to Mr. Daum about the cooperating witness. There is going to be a long transcript of information about things that this cooperating witness told the government. Frankly, I don't see Mr. Daum digesting enough of it to be prepared to go forward.

Tr. of June 2, 2004, at 94-95. Watson's counsel responded, "I would be ready to go in the morning." *Id.* at 95. We recognize that an argument could be made, although Watson has not clearly done so, that the language of counsel was directed toward the timeliness of the Jencks material, and that his "waiver" of any additional time did not contemplate the objection to the Rule 404(b) evidence at all. However, it is not incumbent upon the Court to construct a record, but rather upon the defense.

Insofar as Watson's objections to the notice of the Rule 404(b) evidence address the adequacy of the timeliness of the notice, again, his argument fails on this record. The trial prosecutor identified the "general nature" of the evidence when he stated before the commencement of *voir dire* that

> What we have here, Your Honor, is a cooperating witness who is expected to testify that he sold one of the weapons in this case to the defendant. We intend to prove that by virtue of that person's testimony and on top of that a representative from the legal gun shop where this witness purchased that weapon offering documentary proof that that same weapon was purchased by this cooperating witness and that that same weapon was recovered in the defendant's car, a pretty strong evidentiary link.

Tr. of June 2, 2004, at 5. The Government explained further at 7-8:

> Now, the other evidentiary matter, Your Honor, deals with the fact that the cooperating witness actually sold the defendant two weapons, two Keltec 40-caliber semiautomatic handguns that are one serial number apart. The government, because of security concerns, was not willing to make anything known about this cooperating witness until the day of trial and *we can represent to the court that two virtually identical weapons were sold by this cooperating witness to the defendant between the dates of May 3, 2003 and June 23, 2003* and we ask that the cooperating witness be permitted to testify as to both of those instances because they go to identification. The second cell [*sic*] of the weapon would go to identification. It would go to knowledge, it would go to absence of mistake, plan – scheme or plan to own 40-caliber Keltecs. (Emphasis added.)

Notice of "general nature" is all that Rule 404(b) requires. We have located no precedent of this circuit defining "general nature," nor has appellant supplied any definitive source. One academic source has noted that "the concept of 'general nature' has been liberally construed." *See* 1 MICHAEL H. GRAHAM,

HANDBOOK OF FEDERAL EVIDENCE § 404.5 at 363-64 & n.45 (5th ed. 2001) (citing *United States v. Robinson*, 110 F.3d 1320, 1325-26 (8th Cir. 1997)). *See also United States v. Watt*, 911 F. Supp. 538, 556-57 (D.D.C. 1995) ("Moreover, courts have routinely denied requests by defendants for greater particularity in 404(b) notice.") (collecting cases).

Given that appellant's argument does not spell out any flaws in the timeliness of the notice, specificity as to the date, time, and other details of the 404(b) evidence, the notice was adequate under the Rules. In sum, Watson's counsel specifically declared at trial that introduction of the evidence at such a late time did not impede the defense, and Watson has offered no reason for this Court to second-guess that decision or the judgment of the Court.

### III. Conclusion

For the foregoing reasons, this Court affirms the conviction of the District Court. We further instruct, and the parties agree, that we will retain jurisdiction over this case but remand the record to the District Court for re-sentencing in light of the Supreme Court's recent decision in *United States v. Booker*, 125 S.Ct. 738 (2005). *See United States v. Coles*, 403 F.3d 764, 769-71 (D.C. Cir. 2005).