# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 12, 2010          Decided December 28, 2010

No. 09-3068

UNITED STATES OF AMERICA,
APPELLEE

v.

FRANKLIN H. PETTIFORD,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cr-00162)

*Mary E. Davis* argued the cause for the appellant.

*Jonathan P. Hooks*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen Jr.*, United States Attorney, and *Roy W. McLeese III*, *Mary B. McCord* and *Mary Ann Snow*, Assistant United States Attorneys, were on brief.

Before: GINSBURG, HENDERSON and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: In November 2006, a jury convicted Franklin Pettiford (Pettiford) of possessing with intent to distribute cocaine base in violation of

21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii). Pettiford, contending the Government had failed to disclose exculpatory evidence in its possession in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), moved for a new trial. The district court denied his motion, concluding the undisclosed evidence was not material. For the following reasons, we affirm.

I.

On May 11, 2006, Officer David Augustine of the District of Columbia Metropolitan Police Department (MPD) stopped a 2003 Ford Expedition because of a burned-out headlight.[1] Pettiford was the driver and sole occupant of the vehicle and Augustine determined that its registration had expired. Augustine let Pettiford go with a warning notice regarding the headlight.

Four days later, on May 15, 2006,[2] MPD officers James Chastanet and Theodore Brosey stopped the same Ford Expedition. Pettiford was again the driver and sole occupant. This time, the officers arrested Pettiford for driving an unregistered vehicle and searched the passenger compartment incident to Pettiford's arrest. In the center console, located between the driver's and passenger's seats, Chastanet found a clear plastic bag. The bag contained clusters of white, rock-like substances, some of which were in ziploc bags. The police also found in the console a digital scale, plastic gloves and envelopes. The white, rock-like substances field-tested positive for cocaine base.

---

[1] Our decision in *United States v. Pettiford*, 517 F.3d 584 (D.C. Cir. 2008), sets out much of the relevant factual and procedural background of this case. We draw, at times verbatim, from that decision in summarizing the background here.

[2] All events occurred in 2006 unless otherwise noted.

On June 13, a federal grand jury indicted Pettiford on one count of possessing with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii). Pettiford's first trial began on September 26 but mistried when the jury was unable to reach a unanimous verdict. The case was reassigned to another judge and a second trial commenced on November 27.

At trial, Officer Augustine first testified as to his stop of Pettiford in the Ford Expedition on May 11, when Pettiford was let go with a warning notice about the burned-out headlight. Officer Chastanet then recounted the events leading up to and following Pettiford's arrest on May 15, including the discovery of the plastic bag of drugs and the other paraphernalia in the vehicle's center console. Chastanet testified that, based on his experience, he recognized the white, rock-like substances as cocaine base. The parties stipulated to the analysis conducted by a Drug Enforcement Administration chemist, which analysis concluded the seized substances were 71% cocaine base and weighed a total of 18.8 grams. MPD Detective Anthony Washington, who qualified as an expert witness on the distribution and use of narcotics, identified the substances seized from Pettiford's vehicle as cocaine base. Washington further opined that the packaging of the cocaine base and the presence of the digital scale and gloves were consistent with the wholesale distribution thereof. The ziploc bags, he said, contained "what we call eight balls, 3.5 grams which is an eighth of an ounce" of cocaine base. *Pettiford*, 517 F.3d at 587 (citation omitted).

To buttress its proof that Pettiford knowingly possessed the cocaine base in the console, and that he specifically intended to distribute it, the Government moved *in limine* to introduce

evidence under Federal Rule of Evidence 404(b)[3] that Pettiford had possessed cocaine base with intent to distribute it on April 27, just two and one-half weeks before his May 15 arrest. Over Pettiford's objection, the court admitted the evidence of Pettiford's guilty plea to the earlier offense but, instead of calling witnesses to the events of April 27, the Government, with Pettiford's agreement, read to the jury a redacted transcript of his guilty plea.[4] According to the transcript, the prosecutor in that case proffered and Pettiford agreed to the following facts: On the evening of April 27, MPD officers observed Pettiford briefly converse with a person who appeared to give Pettiford an unknown sum of money and who then followed Pettiford to a nearby parking lot, where Pettiford reached into the front of his pants, withdrew an item and tossed it to the ground in front of the second person. The latter picked up the item and left. The officers then watched Pettiford walk to a blue Mercedes, open the front passenger door, reach inside, bend over into the vehicle, withdraw, close the door and place an "unknown grassy substance" by a nearby bush. Trial Tr. 194-98, *United States v. Pettiford*, No. CR 06-162 (D.D.C. Nov. 27, 2006). The officers subsequently stopped Pettiford and searched the Mercedes, which was registered in his name. In the center console, the police found 48 ziploc bags containing white, rock-like substances that field-tested positive for cocaine. The MPD placed Pettiford under arrest. *Id.*

---

[3] Rule 404(b) permits evidence of "other crimes, wrongs, or acts" to be admitted for the purpose of establishing, inter alia, intent and knowledge.

[4] In early November, between Pettiford's first and second trials in district court, he moved in superior court to withdraw his guilty plea. His motion was pending at the time of his second trial in district court.

After the Government concluded its case-in-chief in this prosecution, the defense introduced a certified "Vehicle Record" for the 2003 Ford Expedition indicating that, as of April 30, the vehicle was registered to Marisa Ardelia Beam of Annandale, Virginia. *Pettiford*, 517 F.3d at 587. Pettiford presented no further evidence. Following closing arguments, the case was submitted to the jury. On November 29, the jury returned a guilty verdict.

Two months after Pettiford's conviction here, the superior court vacated Pettiford's guilty plea as involuntary. On February 15, 2007, Pettiford moved for a new trial, alleging that the vacatur of his guilty plea in superior court constituted newly discovered evidence under Federal Rule of Criminal Procedure 33(b)(1).[5] The district court denied the motion and we affirmed. *Pettiford*, 517 F.3d at 591-92.

Following vacatur of Pettiford's guilty plea, the superior court set trial for June 18, 2007 and later continued the trial date to August 27, 2007. On August 27, the superior court again continued the trial to give Pettiford time to review new discovery material produced by the Government. Included in the new material were photographs of the items the MPD officers had removed from Pettiford's Mercedes when they searched it incident to his arrest on April 27. One photograph showed a District of Columbia driver's license belonging to Covye Cousins. In Pettiford's superior court trial, MPD Officer Marc Wilkins, who had assisted in Pettiford's April 27 arrest and had driven Pettiford's Mercedes from the scene of his arrest to the police station, was the only witness who testified that the license was found in, and removed from, Pettiford's vehicle. Tr.

---

[5] Rule 33 permits a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Subsection (b) provides that a new trial may be granted based on "newly discovered evidence."

of Hr'g on Mot. for New Trial 7, 32-34, June 30, 2009.[6] Neither the Government nor Pettiford, however, asked Wilkins whether the license was found in the center console with the drugs or somewhere else in the vehicle.[7] Pettiford was ultimately acquitted in superior court on March 26, 2008.

Pettiford then filed a second new trial motion in district court on August 25, 2008, alleging the Government's failure to timely disclose to him the photograph of Cousins's driver's license constituted a *Brady* violation. The district court denied Pettiford's motion in a bench ruling on June 30, 2009. Pettiford filed a timely notice of appeal on the same day.

## II.

In *Brady v. Maryland*, the United States Supreme Court held that the Due Process Clause "requires the government to disclose, upon request, material evidence favorable to a criminal defendant, including evidence held by law enforcement officials." *United States v. Oruche*, 484 F.3d 590, 596 (D.C. Cir. 2007) (citing *Brady*, 373 U.S. at 87). The Government's failure to so disclose violates the *Brady* directive if three factors exist: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [the] evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *United States v. Brodie*, 524 F.3d 259, 268 (D.C. Cir. 2008) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)), *cert.*

---

[6] The crime scene search officer who photographed the contents of the vehicle testified that he did not remember the license being in the car. *Id.* at 32-34.

[7] Wilkins died sometime after Pettiford's superior court trial. *Id.* at 7. Pettiford's superior court counsel submitted an affidavit in this case in which he stated "[t]he driver's license was near the cocaine in the center console of the car." Ferguson Aff. ¶ 5.

*denied*, 129 S. Ct. 1396 (2009). To satisfy the third prong—prejudice—the withheld evidence must be material, which means "there must be 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *United States v. Johnson*, 519 F.3d 478, 488 (D.C. Cir. 2008) (quoting *Strickler*, 527 U.S. at 280). "A 'probability' reaches the level of 'reasonable' when it is high enough to 'undermine confidence in the verdict.' " *United States v. Johnson*, 592 F.3d 164, 170 (D.C. Cir. 2010) (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)). "The defendant bears the burden of showing a reasonable probability of a different outcome." *Johnson*, 519 F.3d at 488 (citing *Strickler*, 527 U.S. at 291).

The Government concedes that the photograph of the driver's license is favorable to Pettiford and was not timely disclosed to him. Accordingly, the materiality of the photograph is the sole issue before us. "[T]he assessment of the materiality of . . . evidence under *Brady* is a question of law" reviewed de novo. *Brodie*, 524 F.3d at 268 (quoting *Oruche*, 484 F.3d at 595). If we find a *Brady* violation, "a new trial follows as the prescribed remedy, not as a matter of discretion." *Id.* (quoting *Oruche*, 484 F.3d at 595).

Pettiford first seizes upon a stray statement made by the district court in the course of a lengthy bench ruling on Pettiford's *Brady* motion, claiming the court found the undisclosed photograph of the license material. *See* Tr. of Hr'g on Mot. for New Trial at 42 (court stated that it considered "the evidence of the driver's license in the Mercedes to be material in this case"). The court's very next statement, however, clarified that it did not find the photograph material within the meaning of *Brady*. *See id.* ("But saying that, however, I cannot find the probability of a new trial would result in a different outcome. The reasonable probability sufficient to undermine[] confidence in the outcome . . . ."). The court confirmed its

conclusion as it went on to explain its reasoning. *See id.* ("I do not see that . . . finding another person's license in the car would be sufficient in the court's mind to overcome the verdict in this case, that it would be another verdict of acquittal if this evidence had been available to him.  I cannot find sufficient probability that that would have occurred."); *id.* at 43 ("So if the [404(b) evidence] is minimized by—and the effect is reduced by the evidence that there is a driver's license of someone else found in the car, I cannot find that that would mean that the result would be probably different."); *id.* at 44 ("But I cannot find that the evidence [of Cousins's driver's license being found in the Mercedes] is so drastic . . . [that it] would alter the outcome of this case.").  When the ruling is read in its entirety, therefore, it is plain that the district court did not find the photograph to be material.

Next, Pettiford argues the district court failed to consider certain relevant facts.  First, he argues the court ignored the facts that his first district court trial mistried and that he was acquitted in superior court.  Pettiford is mistaken.  *See id.* at 35 (court acknowledged first district court trial ended in hung jury); *id.* at 39 (court acknowledged Pettiford was acquitted in superior court); *id.* at 43 (court considered "the acquittal in the Superior Court and the affect [sic] that could have on a jury"); *id.* at 44 ("Another factor I considered was the first trial in this court was a hung jury, but the same evidence was used at that time.").  Pettiford also claims the district court failed to consider how Pettiford could have used the photograph of the license if it had been timely disclosed by, for example, requiring the MPD officers to testify about his previous arrest rather than publishing portions of his guilty plea transcript and cross-examining the officers, including now-deceased Officer Wilkins, about where

in the Mercedes the license was located.[8]  Again, Pettiford is mistaken.  *See id.* at 43-44 (court explained that Pettiford's counsel, as trial strategy, agreed to the publishing of Pettiford's guilty plea alternative); *id.* at 44-45 (court noted that Officer Wilkins "had testified previously" that the license was in the Mercedes but had not specified where in the vehicle "so there is the chance that there would be [] different testimony as to where the license was. All we can say is there was testimony that it was in the car according to one officer, and the other officers do not recall it.").

Finally, Pettiford argues the district court erroneously weighed the strength of the overall evidence against him in concluding the undisclosed license was not material under *Brady*.  The court, however, has a "responsibility to evaluate the impact of the undisclosed evidence not in isolation, but in light of the rest of the trial record."  *United States v. Bowie*, 198 F.3d 905, 912 (D.C. Cir. 1999) (citing *United States v. Agurs*, 427 U.S. 97, 112 (1976)); *see also, e.g.*, *Oruche*, 484 F.3d. at 597-601 (strength of overall evidence against defendant relevant in finding no *Brady* violation).

The undisclosed evidence does not undermine the strength of the evidence establishing Pettiford's guilt of the drug offense *sub judice*.  Even without the 404(b) evidence of the April 27 arrest, there was ample evidence establishing Pettiford's

---

[8] Pettiford does not argue that the account of his April 27 arrest would not have been admissible under Rule 404(b) had the photograph been timely disclosed.  Rather, he claims he would have required the MPD officers to testify about that arrest.  In any event, the district court indicated that the evidence of Pettiford's April 27 arrest would have been admitted, whether via the guilty plea transcript or live testimony.  *See* Tr. of Hr'g on Mot. for New Trial at 44 (court concluded undisclosed photograph did not "militate[] against" admissibility of evidence of Pettiford's April 27 arrest).

knowledge of and intent to distribute the drugs found in the vehicle he was driving on May 15. Pettiford had been stopped four days earlier while driving the same vehicle. He was the driver and sole occupant of the vehicle both times, manifesting his repeated use of the vehicle and thus his knowledge of its contents. Incident to Pettiford's May 15 arrest, the MPD officers discovered a substantial amount of cocaine base in the console, some of it individually packaged in ziploc bags, as well as equipment commonly used to distribute cocaine, including a digital scale and plastic gloves. That Pettiford's May 15 arrest came less than three weeks after his April 27 arrest and that both times the police found cocaine base in the center console of the vehicle Pettiford was driving provides strong evidence of his knowledge and intent to distribute the cocaine base on May 15.[9] Accordingly, we cannot conclude that the photograph of

---

[9] As already noted, Pettiford does not challenge the admissibility of the April 27 arrest evidence under Rule 404(b). *Supra* note 8. Nor would timely disclosure of the license have significantly undermined that evidence; although Pettiford contends the presence of Cousins's driver's license in his Mercedes calls into question whether he knew the cocaine base was there, the only thing he claims he would have done differently had he known of the photograph was to insist that the April 27 events be presented to the jury through live testimony instead of by publishing the guilty plea transcript. In fact, the evidence of the April 27 events might have had more impact if, instead of being read to the jury in a brief, "matter-of-fact way," *Pettiford*, 517 F.3d at 591, it had been introduced through the testimony of the officers who witnessed Pettiford engage in an apparent drug sale, walk to his Mercedes, reach inside and place a grassy substance by a nearby bush before arresting him and finding cocaine base in the console. There was thus sufficient evidence from which the jury could conclude Pettiford knowingly possessed with intent to distribute the cocaine base on April 27 even if the photograph of Cousins's license had been timely disclosed and Officer Wilkins had testified the license was found in the center console with the drugs.

Cousins's driver's license is material under *Brady* because there is no "reasonable probability" the jury would have reached a different result with knowledge of the photograph or that the jury's ignorance of the photograph "undermine[s] confidence in the verdict." *Johnson*, 592 F.3d at 170 (quoting *Kyles*, 514 U.S. at 435).

For the foregoing reasons, we affirm the district court's denial of Pettiford's new trial motion.

*So ordered.*